UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIKRAM AJJAMPUR, and
WILLIAM DEVITO
on behalf of themselves and
all others similarly situated,

     Plaintiffs,

v.                               CASE NO.:

APPLE, INC.,

                                  Class Action

     Defendant,

_____/

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
**(Injunctive Relief and Damages Sought)**

     Plaintiffs Vikram Ajjampur and William Devito, on behalf of themselves and others similarly situated, hereby bring this action against Defendant Apple, Inc., and allege as follows:

**INTRODUCTION**

     1.     "Apple iPhones and 3G iPads are secretly recording and storing details of all their owners' movements," reported the British Broadcasting Company.[1]  According to security experts Alasdair Allan and Pete Warden, the location data is hidden from users but unencrypted, making it easy for Apple or third parties to later access.[2]  Apple Inc.'s

---

[1] *iPhone Tracks Users' Movements*, April 20, 2011.  Available at http://www.bbc.co.uk/news/technology-13145562 (last visited April 22, 2011).
[2] Id.

collection of this information is "clearly intentional."[3]

2.        Users of Apple products have to no way to prevent Apple from collecting this information because even if users disable the iPhone and iPad GPS components, Apple's tracking system remains fully functional.

## PARTIES

3.        Plaintiff Vikram Ajjampur is a resident of Hillsborough County, Florida, who at all relevant times has owned an iPhone and carried it with him everywhere.

4.        Plaintiff William Devito is a resident of New York state, who at all relevant times has owned a 3G iPad and has traveled with it extensively.

5.        Defendant Apple, Inc. is a California corporation with its principal place of business in California.

## JURISDICTION AND VENUE

6.        This court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2).  The amount in controversy between the Class as defined herein and the Defendant exceeds $5,000,000, exclusive of interest and costs.  The Class as defined herein consists of individuals from fifty different states.  Further, greater than two-thirds of the Class members reside in states other than California – the state in which Apple is a citizen.

7.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiff Aaron Medvick is a resident of this district, many of the acts and transactions giving rise to this action occurred in this district, and because Apple:

---

[3] *Got an iPhone or 3G iPad? Apple is Recording Your Moves*, by Alasdair Allen and Pete Warden, on radar.oreilly.com.  Available at http://radar.oreilly.com/2011/04/apple-location-tracking.html (last visited April 22, 2011) (hereafter "Recording Your Moves").

   a.  is authorized to conduct business in this district and has availed itself

       of the laws and markets within this district through the promotion,

       marketing, distribution and sale of its products in this district;

   b.  does substantial business in this district; and

   c.  is subject to personal jurisdiction in this district.

### APPLE'S PRIVACY VIOLATIONS

8.      All iPhones log, record and store users' locations based on latitude and
longitude alongside a timestamp.   *Recording Your Moves*.   The iPhones store this
information in a file called "consolidated.db" or something similar.   Id.   Apple intentionally
began recording this information with the release of its iOS 4 operating system in June
2010.[4]   Apple uses a cell-tower triangulation to obtain user location.   *Recording Your
Moves*.   Alternatively, Apple may use global positioning system (GPS) data to obtain user
location.

9.      Apple devices download the user location data to the user's computer when
the mobile device synchronizes ("syncs") or shares data with the computer.   The data is
unencrypted on the mobile devices and also on users' computers that sync with those mobile
devices.

10.     Users of Apple's iPhones and iPads, including Plaintiffs, were unaware of
Apple's tracking their locations and did not consent to such tracking.

11.     Apple's Terms of Service[5] do not disclose its comprehensive tracking of

---

[4] *iPhone Keeps Recording of Everwhere You Go*, by Charles Arthur of the London newspaper Guardian,
Available at http://www.guardian.co.uk/technology/2011/apr/20/iphone-tracking-prompts-privacy-fears (last
visited April 22, 2011).
[5] Available at http://www.apple.com/legal/itunes/uk/terms.html.

users.  Plaintiffs and other users did not provide any sort of informed consent to the tracking at issue in this case.

12.     Apple collects the location information covertly, surreptitiously and in violations of law.

13.     Apple tracks users' locations on its own, separate, apart and in addition to the information it collects in conjunction with other businesses that develop applications for Apple's devices.  This action is not about the applications' collection of information on users; rather, it is specifically in objection to Apple's own collection of user location information.

14.     Apple's iPhones and iPad 3Gs are carried with users to essentially every location they travel to, making the information collected by Apple highly personal; indeed, in many instances it may be information to which employers and spouses are not privy.

15.     The accessibility of the unencrypted information collected by Apple places users at serious risk of privacy invasions, including stalking.

16.     Plaintiffs and proposed Class members were harmed by Apple's accrual of personal location, movement and travel histories because their personal computers were used in ways they did not approve, and because they were personally tracked just as if by a tracking device for which a court-ordered warrant would ordinarily be required.

17.     Plaintiffs bring this action to stop Apple's illegal and intrusive scheme of collecting personal location information.

18.     Plaintiffs seek an injunction requiring Apple to disable such tracking in its next-released operating system for the relevant devices, which include at least iPhones

running iOS 4 operating systems and 3G iPads.

19.     Plaintiffs also seek damages for violations of their statutory and common law privacy rights.

## CLASS ACTION ALLEGATIONS

20.     The Plaintiffs bring this action on behalf of themselves and proposed plaintiff Class members under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons in the United States who purchased, owned or carried around an iPhone with the iOS 4 operating system or a 3G iPad between the release of those products for sale by Apple and the present. Excluded from the Class are those who purchased the products for resale; members of the federal judiciary and their relatives; and Defendant's officers, directors and employees.

21.     While the exact number of Class members is unknown to the Plaintiff at this time, there are likely millions of members of the proposed Class, as approximately 59 million people now have an iPhone, and many of those run the iOS 4 operating system at issue in this case, and about 10 million people have purchased an iPad, many of those the 3G version at issue here. The Class is so numerous that joinder of all members of the Class is impracticable.

22.     This action involves questions of fact common to all Class members because all Class members purchased, own or use iPhones or iPads under uniform Apple privacy policies.

23.     This action involves question of law common to all Class members because:

    a.  The Computer Fraud and Abuse Act, violated here, is national in scope
        and applies to all prospective Class members;

b. Each state has enacted laws comparable to the Federal Trade Commission Act, known as õlittle FTCö acts, which provide private causes of action with sufficient uniformity that Appleøs standardized practices of collecting location information violated the õlittle FTCö acts of each state in the same way; and

c. Appleøs privacy invasions have violated Plaintiffsø and Class membersø common law rights in uniform ways.

24.     Plaintiffsø claims are typical of those of other members of the Class as there are no material differences in the facts and law underlying the claims of Plaintiffs and the Class and by prosecuting their claims Plaintiffs will advance the claims of Class members.

25.     The common questions of law and fact among all Class members predominate over any issues affecting individual members of the Class, including but not limited to:

a. whether Apple obtained and stored Plaintiffsø location information;

b. whether Apple failed to disclose material terms in its privacy policy regarding its collection of usersø location information;

c. whether Apple intends to market or otherwise exploit usersø location information;

d. whether the alleged conduct constitutes violations of the laws asserted herein;

e. whether Plaintiff and Class members are entitled to declaratory and injunctive relief;

f.    whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

g.    whether Plaintiff and Class members have sustained consequential loss, and to what measure; and

h.    whether Apple's acts and omissions warrant punitive damages.

26.    Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation.

27.    The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

28.    Class treatment of the claims set forth herein is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Absent a class action, a multiplicity of individual lawsuits would be required to address the claims between Class members and Apple, and inconsistent treatment and adjudication of the claims would likely result.

29.    The litigation and trial of Plaintiffs' claims is manageable. Apple's standardized "Terms and Conditions" at issue, Apple's uniform deployment of operating systems that track each user in identical ways, the consistent provisions of the relevant laws, and the readily ascertainable identities of many Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

30.    Apple has acted or refused to act on grounds that apply generally to the Class

so that final injunctive relief and corresponding declaratory relief are appropriate.

31.     Unless a class-wide injunction is issued, Apple will continue to commit the violations alleged, and the members of the Class will continue to be tracked, unlawfully surveilled, and potentially endangered.

32.     Apple has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

33.     Apple's acts and omissions are the direct and proximate cause of damage as described in the following Counts:

## COUNT I
### (Injunction and Declaration)

34.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

35.     Plaintiff Vikram Ajjampur purchased, owns, uses and carries with him Apple's iPhone with iOS 4 and has done so at all times relevant to this action.

36.     Plaintiff William Devito purchased, owns, uses and carries with him Apple's 3G iPad and has done so at all times relevant to this action.

37.     Plaintiffs relied on the terms of Apple's privacy policy, which did not explain the pervasive location tracking that Apple intended to undertake and did undertake.

38.     Apple knew that ordinary consumers acting reasonably would not understand the Apple privacy policy to include the location tracking and syncing at issue in this case.

39.     Irreparable injury has resulted and continues to result from Apple's unauthorized tracking of millions of Americans.  Once Plaintiff began carrying their respective Apple devices, Apple began tracking their locations.  This has happened in the

past and continues to happen all across the United States.  It is unconscionable to allow Apple to continue unlawfully and without proper consent tracking Plaintiffs and proposed Class members.  If Apple wanted to track the whereabouts of each of its products' users, it should have obtained specific, particularized informed consent such that Apple consumers across America would not have been shocked and alarmed to learn of Apple's practices in recent days.

40.     Inadequate remedy at law exists because users of Apple products have to no way to prevent Apple from collecting this information because even if users disable the iPhone and iPad GPS components, Apple's tracking system remains fully functional.

41.     Balance of the hardships favors Plaintiffs and the Class because it is easier for Apple to stop unlawfully tracking the every move of Americans than it is for individual consumers to circumvent Apple's sophisticated tracking programs.  To require that Plaintiffs and the Class bear the consequences of Apple's deceptive privacy policy and unlawful acquisition of personal location information would be inequitable.

42.     The public has an interest in being able to travel without being tracked, and without that **unencrypted tracking information** being synced with computers that are networked to the internet and are unsecured.  The public interest would not be disserved, and indeed would be advanced, by entering injunctions against Defendant.  See eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).

43.     The injunction should require Apple to reconfigure its software so that users' personal location information is neither collected, nor synced to other computers.

## COUNT II
### (Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

44.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

45.     By secretly installing software that records usersø every moves Apple has accessed Plaintiffsø computers, in the course of interstate commerce or communication, in excess of the authorization provided by Plaintiffs as described in the Computer Fraud and Abuse Act (the õFraud Actö) 18 U.S.C. § 1030(a)(2)(C).

46.     Plaintiffsø computers, and those of the Class, are protected computers pursuant to 18 U.S.C. § 1030(e)(2)(B).

47.     Plaintiffsø iPhones and iPads, and those of the Class, are also protected computers pursuant to 18 U.S.C. § 1030(e)(2)(B).

48.     Apple further violated the Fraud Act by causing the transmission of a program, information, code or command ó both in deploying the iOS 4 operating systems, and also as a result of the syncing of user handheld devices with their laptop or desktop computers ó and as a result caused harm aggregating at least $5,000 in value.

49.     Appleøs actions were knowing or reckless and, as described above, caused harm to Plaintiffs and proposed Class members.

50.     Plaintiffs seek recovery for this loss, as well as injunctive and declaratory relief to prevent future harm.

## COUNT III
### (Unfair or Deceptive Acts in Violation of Each State's "Little FTC" Acts)

51.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

52.     This cause of action is brought by Plaintiff Vikram Ajjampur pursuant to Florida's Deceptive and Unfair Trade Practices Act.  See Fla. Stat. § 501.201.

53.     This cause of action is brought on behalf of Class members pursuant to each state's unfair or deceptive acts and practices (UDAP) statutes, i.e. the "Little FTC" Acts (hereafter "Acts").  The Act of each state follows the Federal Trade Commission Act and provides for a private cause of action.

54.     "Consumer" means "an individual… ." Fla. Stat. § 501.203(7).

55.     Plaintiffs and Class members are consumers as defined under these Acts.

56.     The FTC Act prohibits an act or practice that violates either the standards for "unfairness," or those for "deception" – the two are independent of each other.  An act or practice may be found to be unfair where it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).  An act or practice is deceptive if it is likely to mislead a consumer acting reasonably under the circumstances.

57.     Apple's inadequate disclosures made in its privacy policy were both unfair and deceptive.

58.     Apple's tracking and syncing of Plaintiffs' and other users' personal information was both unfair and deceptive because Apple's users had no knowledge of Apple's intent or actions.

11

59.     The Acts of Florida and the other states substantially follow the FTC Act.

60.     Florida's Act defines a violation:

=Violation of this part' means any violation of this act or the rules adopted under this act and may be based upon any of the following í

(a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.;
(b) The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.[6]

61.     Apple's privacy policy contained deceptive misrepresentations that are material and are likely to and did deceive ordinary consumers acting reasonably, including the Plaintiffs, into believing that their every move would not be tracked by Apple and then stored for future use in an Apple-designed database.

62.     Apple's omission of its true intent to track users was material to terms and conditions under which Plaintiffs and Class members purchased their iPhones and iPads.  An act or practice is material if it is likely to affect a consumer's decision regarding the product. Plaintiffs and other users would not have purchased Apple products and indeed would have purchased the products of a competitor had they known that their every movement would be tracked and recorded.

63.     Here, Apple specifically omitted from its privacy policy any indication express claims on their Products, knowing that such disclosure would prevent consumers from consummating their purchases.

---

[6] Fla. Stat. § 501.203(3).

64.     Florida's Act declares the acts and omissions of Apple to be unlawful.  The statute says:

> (1)   Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
>
> (2)   It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

Fla. Stat. § 501.204.

65.     Apple's practices have caused substantial injury to Plaintiffs and Class members by depriving them of money they would have spent elsewhere and by covertly delivering software that tracks users' every movements.

66.     Apple's unfair omissions injure both consumers and competition.  Consumers are injured in all the ways that Plaintiffs have been injured, as described throughout this complaint, and competition suffers in several ways too: (1) honest companies that do not covertly track their customers' locations have lost and continue to lose market share to Apple products as already described; (2) Apple is rewarded for its deceit with billions of dollars in revenues (which should all be disgorged); and (3) competitors behaving deceptively creates a "race to the bottom," wherein additional companies feel economic pressure to similarly track users' whereabouts to later sell and thereby avoid losing further market share in the rapidly growing and competitive market for precise consumer demographic, location and other data. There are no countervailing benefits of Apple's conduct: not to consumers, nor to competition.

67.     Apple violated and continues to violate the Acts of each state by engaging in the trade practices described above, that has caused and continues to cause substantial injury to consumers, which are not reasonably avoidable by the consumers themselves, in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the iPhone and iPads.

68.     There were reasonable alternatives available to further Apple's legitimate business interests, other than the conduct described herein.  Apple, for example, could have abstained from tracking the exact locations of users of its products.  Apple also could have required a single sentence disclosure describing its rampant covert tracking of individual users' locations to be signed by purchasers – rather than or in addition to it's hundred-plus page privacy terms and conditions.

69.     This cause of action is brought by Plaintiff William Devito pursuant to New York's deceptive business practices laws.  <u>See</u> N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law §§ 349 *et seq*.

70.     New York prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce" .  N.Y. Gen. Bus. Law § 349(a).

71.     Apple's act of tracking its users was "consumer-oriented" because it preys on Apple's own purchasers only.  <u>See</u> <u>Stutman v. Chemical Bank</u>, 731 N.E.2d 608, 611 (N.Y. 2000).

72.     Apple's act of tracking its users is misleading in a material way because Apple fails to disclose, or event hint at, the full extent of its user location tracking in the Apple privacy policy terms and conditions.  Apple's acts have a broad impact on consumers

at large because Apple's inadequate disclosures, coupled with its unlawful tracking continue to impact prospective purchasers.

73.     Plaintiffs and Class members have suffered injury as a result of Apple's deceptive acts and omissions because Plaintiffs would have not bought Apple devices had they known that they would be tracked.

74.     Plaintiffs have suffered injury as a direct and proximate result of Apple's deceptive acts, practices and omissions.  Injury includes Plaintiffs' purchases of their Apple devices.  Actual injury to Plaintiffs also includes the collection of their private location information and the continued existence of databases of that same information – databases that are unencrypted and accessible to the public.

75.     Apple willfully and knowingly violated § 349(a) and is therefore subject to three times the actual damages suffered by Plaintiffs and the Class.

76.     Apple deceived Plaintiffs and consumers, and treated them unfairly by tracking their movements as described above, and violated the Acts of each state by omitting from its privacy policy the full extent of its tracking:

     a.    Alabama's Deceptive Trade Practices Act declares deceptive practices unlawful.  Ala. Code §§ 8-19-1 *et seq.*;

     b.    Alaska's Unfair Trade Practices and Consumer Protection Act. Alaska Stat. §§ 44.50.471 *et seq.*;

     c.    Arizona's Consumer Fraud Act.  Ariz. Rev. Stat. §§ 44-1521 *et seq.*;

     d.    Arkansas's Deceptive Trade Practices Act prohibits "false, or deceptive acts or practices in business, commerce, or trade." Ark. Code §§ 4-88-101 *et seq.*;

e.  California's Consumer Legal Remedies Act, and also the Unfair Competition Law.  Cal Civ. Code §§ 1750 *et seq.*, and Cal. Bus. & Prof. Code §§ 17200 *et seq.*, respectively;

f.  Colorado's Consumer Protection Act.  Colo. Rev. Stat. §§ 6-1-101 *et seq.*;

g.  Connecticut's Unfair Trade Practices Act.  Conn. Gen. Stat. §§ 42-110a *et seq.*;

h.  Delaware's Consumer Fraud Act, and also its Uniform Deceptive Trade Practices Act.  Del. Code, Title 6 §§ 2511-2571, 2580-2584, and Title 6 §§ 2531-2536, respectively;

i.  District of Columbia's Act.  D.C. Code §§ 28-3901 *et seq.*;

j.  Florida's Deceptive and Unfair Trade Practices Act.  Fla. Stat. §§ 501.201 *et seq.*;

k.  Georgia's Uniform Deceptive Trade Practices Act, and also the Fair Business Practices Act.  Ga. Code §§ 10-1-370 *et seq.*, and §§ 10-1-390 *et seq.*;

l.  Hawaii's Uniform Deceptive Trade Practices Act.  Haw. Rev. Stat. §§ 480-24 *et seq.*, §§ 484A-1 *et seq.*;

m.  Idaho's Consumer Protection Act.  Idaho Code §§ 48-601 *et seq.*;

n.  Illinois's Consumer Fraud and Deceptive Business Practices Act, and also its Uniform Deceptive Trade Practices Act.  815 Ill. Comp. Stat. 505/1 *et seq.*, and 815 Ill. Comp. Stat. 510/1 *et seq.*;

o.  Indiana's Deceptive Consumer Sales Act.  Ind. Code §§ 24-5-0.5-1 *et seq.*;

p.  Iowa's Act.  Iowa Code §§ 714.16 *et seq.*;

q.  Kansas's Consumer Protection Act.  Kan. Stat. §§ 50-623 *et seq.*, 50-676 *et seq.*;

r.  Louisiana's Unfair Trade Practices and Consumer Protection Law.  La. Rev. Stat. §§ 51:1401 *et seq.*;

s.  Maine's Unfair Trade Practices Act, and also its Uniform Deceptive Trade Practices Act.  Me. Rev. Stat., Title 5 §§ 205-A *et seq.*, and Title 10 §§ 1211 *et seq.*, respectively;

t.  Maryland's Consumer Protection Act.  Md. Code Com. Law §§ 13-101 *et seq.*;

u.  Massachusetts's Consumer Protection Act.  Mass. Gen. Laws ch. 93A §§ 1 *et seq.*;

v.  Michigan's Consumer Protection Act.  Mich. Comp. Laws §§ 445.901 *et seq.*;

w.  Minnesota's Uniform Trade Practices Act, and its False Statement in Advertising Act, and also its Prevention of Consumer Fraud Act. Minn. Stat. §§ 8.31, 325D.43 *et seq.*, and §§325F.68 *et seq.*;

x.  Mississippi's Consumer Protection Act.  Miss. Code §§ 75-24-1 *et seq.*;

y.  Missouri's Merchandising Practices Act.  Mo. Rev. Stat. §§ 407.010 *et seq.*;

z.  Montana's Unfair Trade Practices and Consumer Protection Act. Mont. Code §§ 30-14-101 *et seq.*;

aa. Nebraska's Consumer Protection Act, and also its Uniform Deceptive Trade Practices Act.  Neb. Rev. Stat. §§ 59-1601 *et seq.*, and §§ 87-301 *et seq.*;

bb. Nevada's Trade Regulation and Practices Act.  Nev. Rev. Stat. §§ 598.0903 *et seq.*, and § 41.6000;

cc. New Hampshire's Consumer Protection Act.  N.H. Rev. Stat. §§ 358-A:1 *et seq.*;

dd. New Jersey's Consumer Fraud Act.  N.J. Stat. §§ 56:8-1 *et seq.*;

ee. New Mexico's Unfair Practices Act.  N.M. Stat. §§ 57-12-1 *et seq.*;

ff. New York's Act.  N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law §§ 349 *et seq.*;

gg. North Carolina's Act.  N.C. Gen. Stat. §§ 75-1.1 *et seq.*;

hh. North Dakota's Consumer Fraud Act.  N.D. Cent. Code §§ 51-15-01 *et seq.*;

ii. Ohio's Consumer Sales Practices Act, and also its Deceptive Trade Practices Act.  Ohio Rev. Code §§ 1345.01 *et seq.*, and §§ 4165.01 *et seq.*;

jj. Oklahoma's Consumer Protection Act, and also its Deceptive Trade Practices Act.  Okla. Stat., Title 15 §§ 751 *et seq.*, Title 78 §§ 51 *et seq.*, respectively;

kk. Oregon's Unlawful Trade Practices Law.  Or. Rev. Stat. §§ 646.605 *et seq.*;

ll. Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  73 Pa. Stat. §§ 201-1 *et seq.*;

mm. Rhode Island's Unfair Trade Practices and Consumer Protection Act.  R.I. Gen Laws §§ 6-13.1-1 *et seq.*;

nn. South Carolina's Unfair Trade Practices Act.  S.C. Code §§ 39-5-10 *et seq.*;

oo. South Dakota's Deceptive Trade Practices and Consumer Protection Law.  S.D. Cod. Laws §§ 37-24-1 *et seq.*;

pp. Tennessee's Consumer Protection Act.  Tenn. Code §§ 47-18-101 *et seq.*;

qq. Texas's Deceptive Trade Practices – Consumer Protection Act.  Tex. Bus. & Com. Code §§ 17.41 *et seq.*;

rr. Utah's Unfair Practices Act, and its Consumer Sales Practices Act, and also its Truth in Advertising Act.  Utah Code §§ 13-2-1 *et seq.*, 13-5-1 *et seq.*, and §§ 13-11-1 *et seq.*, and also §§ 13-11a-1 *et seq.*, respectively;

ss. Vermont's Consumer Fraud Act.  Vt. Stat., Title 9 §§ 2451 *et seq.*;

tt. Virginia's Consumer Protection Act.  Va. Code §§ 59.1-196 *et seq.*;

uu. Washington's Consumer Protection Act.  Wash. Rev. Code §§ 19.86.010 *et seq.*;

vv. West Virginia's Consumer Credit and Protection Act.  W. Va. Code §§ 46A-6-101 *et seq.*;

ww. Wisconsin's Deceptive Trade Practices Act.  Wis. Stat. §§ 100.18 *et seq.*;

    xx.   Wyoming's Consumer Protection Act.  Wyo. Stat. §§ 40-12-101 *et seq.*; and

    yy.   the equivalent and applicable laws in the other remaining U.S. territories.

77.    Apple is liable for attorney's fees and reasonable costs pursuant to Fla. Stat. § 501.2105, and the comparable statutes of the other states, as described above, if Plaintiff and Class members prevail.

78.    Plaintiffs also seek punitive damages.

79.    Plaintiffs seeks a declaratory judgment under Fla. Stat. § 501.2105.

80.    Violations of the relevant computer laws, both federal and state, also serve as a predicate for violations of these UDAP laws.

81.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

## COUNT IV
### (Fraudulent, Intentional Misrepresentation)

82.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

83.    Apple represented to Plaintiffs and Class members that it would not collect information about their every movement and location, and omitted disclosing this to Plaintiffs.  See Essex Ins. Co. v Universal Entertainment & Skating Center, Inc., 665 So. 2d 360 (Fla. 5th DCA 1995) (discussing fraud generally).

84.    Apple not only knew that its privacy terms and conditions policy was, and continues to be, false, deceptive and untrue, by omitting that Apple will track users, but

Apple also intended for Plaintiffs and Class members to rely on its deceptive statements.

85.     Apple's fraud is comprised both the omissions of proper disclosures to its users and to its illegal tracking of their movements.

86.     Plaintiffs and Class members did not know about Apple's omissions.

87.     Plaintiffs and Class members did not know that Apple has been tracking their movements.

88.     Plaintiffs and Class members, acting as ordinary consumers, reasonably relied on Apple's representations.  Plaintiffs had a right to rely on Apple's representations.  Plaintiffs' and Class members' reliance on Apple's omissions was a substantial factor in causing their harm.  Apple's tracking of users was and is material, and Plaintiffs and Class members reasonably believed that their every movement would not be tracked.

89.     Plaintiffs and Class members were damaged in the amount of money required to purchase Apple's products.

90.     Plaintiff and the Class seek punitive damages from Apple.

91.     Apple had and continues to have a duty of good faith, which implicitly includes a duty not to deceive consumers, and also not to conduct this sort of covert digital surveillance on consumers.  And they certainly have a duty not to *stalk* consumers.  But that is exactly what Apple has done and continues to do.

92.     To remedy Apple's intentional omission to consumers, and omission of clarifying statements during the sales process, Plaintiffs and Class members seek to rescind the contracts, and thereby disgorge all monies paid to Apple for these products.

## COUNT V
### (Negligent Misrepresentation)

93.      Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

94.      Apple omitted a material fact ó that purchasers would be tracked at all times ó during its sale of iPhones and iPads to consumers.

95.      Apple was negligent in making the omission because it should have known that whether their every movements would be tracked, recorded and stored for later use was material to consumers.

96.      Apple, in making that omission intended, or expected, that Plaintiffs and Class members would rely on the omission.

97.      Plaintiffs justifiably relied on Appleøs omissions about its tracking of purchasers, and would not have purchased Appleøs products but for the omission.  Plaintiffs were damaged in amounts equal to the price they paid for Apple products.

98.      Appleøs omissions were material and directly and proximately caused ordinary consumers acting reasonably, Plaintiffs and Class members included, to buy the iPhone and iPad products.  Without Appleøs omissions of its covert intentions, the products would not have been purchased, and Plaintiffs would not have suffered damages.

99.      Plaintiff seeks punitive damages from Apple.

## COUNT VI
### (Unjust Enrichment, Money Had and Received)

100.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

101.     Unjust enrichment results from a transfer that is ineffective to conclusively alter ownership rights.[7]  Here, Apple's omissions made Plaintiffs and Class members believe that a term material to the contract was different than it actually was.  Morally and ethically ó and therefore, in equity ó the Apple has gained a benefit for which it has not exchanged the promised consideration.  Apple promised products capable of certain tasks, but instead, like the Trojan Horse, delivered products to spy on Plaintiffs and Class members and to sell their personal information at a future date.  This constitutes a total failure of consideration.

102.     Apple, through the omission of its true intentions, cultivated in consumers a mistake of fact that would not have existed but for Defendant's intentional omissions.

103.     Because of Apple's omissions, Plaintiffs and Class members conveyed a benefit to Apple by purchasing its products and then being tracked everywhere they subsequently traveled.  Apple appreciated the benefit conferred on it by Plaintiffs in this transaction because it was enriched in the amount Plaintiffs paid for the iPhone and iPad.

104.     Plaintiffs have no adequate remedy at law due to the difficulty of quantifying damages caused by being tracked, having that location information stored or downloaded on an unencrypted database.  Apple is responsible for unknown increases disclosures about private location information of Plaintiffs, their families, Class members and future purchasers, as a direct consequence of constantly recording all of their locations.

105.     Plaintiffs and Class members lacked the requisite intent to form a contract for the products that they actually received.  There can be no valid contract without intent.

---

[7] See Restatement, Third, of Restitution and Unjust Enrichment, § 1, comment b (Discussion Draft 2000).

106. Products supplied were inadequate consideration for the monies paid. These contracts also fail for want of consideration.

107. Apple accepted and retained money paid to it by Plaintiffs. The affirmative, knowing and intentional misrepresentations and omissions of Apple, which Plaintiff reasonably relied upon, in combination with Apple's blatant breach of Plaintiffs' privacy, constitute circumstances that make it inequitable for Apple to retain Plaintiff's money.

## COUNT VII
### (Violations of Computer Crimes Acts)

108. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above, and those that come after as if fully set forth here.

109. "Computer" means an internally programmed, automatic device that performs data processing." Fla. Stat. § 815.03(3).

110. "access" means to approach, instruct, communicate with, store data, retrieve data, or otherwise make use of any resources of a computer…." Fla. Stat. § 815.03(10).

111. "Whoever willfully, knowingly, and without authorization modified equipment or supplies used or intended to be used in a computer… commits an offense." Fla. Stat. § 815.05. This is a felony in Florida.

112. "Whoever willfully, knowingly, and without authorization accesses or causes to be accessed any computer, computer system or computer network… which in whole or part, is owned by… another commits an offense against computer users." Fla. Stat. § 815.06.

113. In New York, "unauthorized use of a computer is a class A misdemeanor; computer tampering" is too. N.Y. Penal Law § 156.00 *et seq*.

114.     Plaintiffsø iPhones and iPads are õcomputersö within the definitions of both Florida and New York law.

115.     Apple õaccessedö Plaintiffsø computers without authorization.   This constituted õunauthorized useö or õcomputer tamperingö under New York law.

116.     Plaintiffs were directly and proximately damaged in the amount they paid for the Products.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment against Apple as follows:

A.     For an order certifying the Class defined herein, appointing undersigned counsel as Class Counsel, approving Plaintiffs as Class representatives, and requiring that notice be provided to the Class at Appleøs expense, pursuant to Fed. R. Civ. P. 23;

B.     For declaratory and injunctive relief, including enjoining Apple from continuing to omit its true intentions about tracking purchasers of its products, and requiring Apple to stop tracking its productsøusers;

C.     For judgment on behalf of the Class as defined herein for the amount of any payments made to Apple with interest thereon;

D.     For exemplary, treble or punitive damages;

E.     For reasonable attorneysøfees and costs; and

F.     For such other and further relief as this Court deems equitable or just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable against Apple.

Respectfully submitted,

 s/ Aaron Mayer
Aaron C. Mayer
FBN: 0076983
MAYER LAW GROUP
18 Carolina St., Suite B
Charleston, SC  29403
T: (843) 376-4929
F: (888) 446-3963
aaron@mayerlawgroup.com

Trial Counsel for Plaintiffs